UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FREDRICK ANDREW MORRIS,

                      Plaintiff,

v.                                                                         Case No. 24-cv-1464-pp

TODD HAMILTON, *et al.*,

                      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Fredrick Andrew Morris, who is incarcerated at the Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On January 14, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $14.05. Dkt. No. 13. The court received that fee on January 22, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.</u>

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff has sued defendants Todd Hamilton, Martha Breen-Smith, Sarah Boyea, Angela Tayson, Jay Howarth and Amy Woolf. Dkt. No. 1 at 1. He alleges that on September 23, 2024, he wrote an interview request to the warden at Green Bay Correctional Institution stating that he was going to starve himself to death but that he did not need "clinical observation" because he was "starving [him]self to death[,] not overdosing or hanging [him]self." Id. at 2. The plaintiff states that the next day he stopped drinking water "to hasten up [his] demise." Id.

Four days later, on September 27, 2024, the plaintiff allegedly went to the health services unit (HSU) and they sent him to the hospital where he refused treatment. Id. at 2-3. The plaintiff says that he returned to Green Bay and that Breen-Smith tried to convince him to talk to her saying, "Dr. Hamilton said you not talking to me is not enough. If you don't talk to me I am going to put you on observation." Id. at 3.

Howarth allegedly came and the plaintiff told him that he would not talk to Breen-Smith because he didn't trust her. Id. The plaintiff says that he also told Howarth that he "did not need observation being that being in a room with a bright light on 24 hours a day with a 4x3x blanket, a smock, & a hard rubber mat would not stop [him] from starving & dehydrating [him]self." Id. Howarth allegedly asked the plaintiff if he was mentally ill, and the plaintiff replied that he was. Id. The plaintiff says that he asked Howarth how observation was going to make him eat or drink because he already was in a cell with a camera. Id.

The plaintiff alleges that Howarth "went & got a suit up team" and that when he returned, the plaintiff was still sitting on the floor, "not being a threat in any way." Id. The plaintiff states that he tried to address the handheld camera, at which time Howarth cut him off, "giving orders then he spray[e]d [the plaintiff] directly in the right side of [his] face with the Mark-30[.]" Id. The spray allegedly caused the plaintiff's asthma to bother him, and the plaintiff had to use his emergency inhaler. Id. He says that his skin, eyes, lungs and genitals were burning and that staff strip-searched him while he was sitting because he was weak. Id.

The plaintiff alleges that for seventeen days, from September 27 through October 14, 2024, Breen-Smith, Boyea, Tayson or Woolf, who are PSU (presumably, psychological services unit) staff members, visited him once a day and asked how he was feeling. Id. The plaintiff says that once he told them he wanted to be taken off observation, they asked whether he was going to start eating and drinking and when the plaintiff replied no, they kept him on observation. Id. at 3-4. These defendants allegedly acted under the direction of Hamilton, the PSU manager. Id. The plaintiff alleges that he informed them that the cell was cold, that he could not write to his friends and family, that he could not read or exercise and that he could not sleep due to the hard rubber mat and twenty-four hour lighting. Id.

On October 18, 2024, the plaintiff allegedly was removed from observation. Id. He says that he began to not eat or drink again, but that he was not placed back on observation. Id.

The plaintiff claims that he is suing both for violations of federal law and under the court's diversity jurisdiction. Id. at 5. He seeks damages and injunctive relief. Id. He says that he is suing the defendants in their individual capacities. Id.

C. Analysis

To state a claim for excessive use of force under the Eighth Amendment, a plaintiff must allege that a defendant applied force maliciously and sadistically to cause harm rather than in a good faith attempt to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Rice *ex rel.* Rice

5

v. Corr. Med. Servs., 675 F.3d 650, 668 (7th Cir. 2012). Factors relevant to a defendant's mental state include the need for force, the amount of force used, the threat reasonably perceived by officers, efforts made to temper the severity of the force, and the extent of injuries caused by the force. Whitley v. Albers, 475 U.S. 312, 321 (1986); Rice, 675 F.3d at 668. A "prisoner need not show a 'significant injury' in order to have a good claim under the [E]ighth [A]mendment, if a guard inflicted pain maliciously or sadistically." Guitron v. Paul, 675 F.3d 1044, 1046 (7th Cir. 2012) (citing Hudson, 503 U.S. at 7).

The court will allow the plaintiff to proceed on an excessive force claim against Howarth in his individual capacity based on allegations that Howarth unnecessarily deployed pepper spray on the plaintiff while the plaintiff was sitting in his cell in a weakened state from not eating and drinking.

The plaintiff has not stated a claim against the other defendants. His complaint describes them trying to help him when he said he wanted to kill himself by not eating and drinking. Prison officials must help incarcerated individuals who are suicidal, and the defendants could be liable for *not* helping the plaintiff when the plaintiff told them he wanted to starve himself. See Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001) ("It goes without saying that suicide is a serious harm."); Freeman v. Berge, 441 F.3d 543, 546 (7th Cir. 2006) ("prison can[not] allow a prisoner to [either] starve himself to death, or even starve himself to the point at which he seriously impairs his health"). The plaintiff alleges that after he wrote to the warden advising him that he was suicidal and wanted to starve himself to death, prison staff

6

followed up by taking him to the hospital and when he returned, placing him on observation status during which staff visited him daily, asked him how he was doing and had the ability to monitor him constantly. He alleges that he was told that he would be placed on observation status if he did not eat. The plaintiff also states that the conditions on observation status were uncomfortable. Contrary to the plaintiff's assertions, his placement on observation status after he complained that he was suicidal was prudent and reasonable. He has not stated a claim based on his allegations that he was unnecessarily placed on observation status after he said he was going to starve himself to death.

In the complaint, the plaintiff states that the defendants violated his rights under state law, but the court cannot identify any state law claim upon which the plaintiff may proceed. Further, to proceed in *federal* court on alleged violations of *state* law, the plaintiff must show that each defendant is a citizen of a different state than the plaintiff. The plaintiff has not made that showing, and because the defendants appear to have worked at the Green Bay Correctional Institution, it is likely that all of them are Wisconsin citizens, just like the plaintiff.

The plaintiff may proceed only on an excessive force claim against Howarth. The court will dismiss the remaining defendants and claims.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

7

The court **DISMISSES** defendants Todd Hamilton, Martha Breen-Smith, Sarah Boyea, Angela Tayson and Amy Woolf.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Jay Howarth. Under the informal service agreement, the court **ORDERS** that defendant to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$335.95** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden of Green Bay Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 23rd day of July, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**